UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK CHRISTOPHER GILLES, <br><br>Plaintiff,<br><br>v.<br><br>DALE WINETEER, d.b.a. A TO Z ENTERPRISES, INC., d.b.a. ROADONE SAN DIEGO; CITY OF SAN DIEGO acting in capacity of SAN DIEGO POLICE DEPARTMENT; STEVE GORDON in his capacity as Director of STATE OF CALIFORNIA DEPARTMENT OF MOTOR VEHICLES; KATHLEEN WEBB in her capacity as Chief Deputy Director of STATE OF CALIFORNIA DEPARTMENT OF MOTOR VEHICLES; CALIFORNIA DEPARTMENT OF MOTOR VEHICLES; and DOES 1-25, inclusive,<br><br>Defendants. | Case No.: 3:19-cv-1492-GPC-BGS<br><br>**ORDER GRANTING MOTION TO DISMISS WITHOUT PREJUDICE**<br><br>**ECF No. 2.** |

On July 8, 2019, Plaintiff Mark Christopher Giles ("Plaintiff") filed his initial complaint in California Superior Court. ECF No. 1-2 at ¶ 11. On August 5, 2019, Plaintiff filed his first amended complaint ("FAC") alleging five causes of action: (1) wrongful conversion, *id.* at ¶¶ 13–102; (2) fraud / intentional misrepresentation, *id.* at ¶¶ 103–55; (3) "preliminary injunction," *id.* at ¶¶ 156–224; (4) deprivation of property under *Monell*, *id.* at ¶¶ 225–83; and (5) conspiracy to violate Plaintiff's rights. *Id.* at ¶¶ 284–330. Plaintiff named the City of San Diego ("Defendant" or "City") as a defendant as to the First, Second, Fourth, and Fifth claims. *Id.* at ¶¶ 11, 34, 69, 82. Plaintiff's FAC contain none of the exhibits attached to his original complaint. *Id.* at ¶ 11.

On August 9, 2019, Defendant removed the action to federal court alleging federal question jurisdiction. ECF No. 1. On August 16, 2019, Defendant filed a motion to dismiss Plaintiff's FAC or, alternatively, for an order compelling Plaintiff to provide a more definite statement of fact. ECF No. 2. On August 29, 2019, Plaintiff filed a response. ECF No. 5. On September 12, 2019, Defendant filed a reply. ECF No. 6.

The Court now addresses whether Plaintiff has adequately pled a claim for which relief can be granted as to the First, Second, Fourth, and Fifth causes of action. The Court finds that Plaintiff has not done so and GRANTS Defendant's motion to dismiss without prejudice. The Court GRANTS Plaintiff leave to amend the FAC and INSTRUCTS Plaintiff that any exhibits cited in any complaint should be attached to it. Plaintiff may refile a second amended complaint **no later than December 15, 2019.**

**I.  Standard of Review**

A Rule 12(b)(6) motion compels the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted." Fed. R. Civ. Pro. 12(b)(6). To "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 566 U.S. 662, 677 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

2

the reasonable inference that the defendant is liable for the misconduct alleged." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). Consequently, while "detailed factual allegations" are unnecessary, the complaint must contain more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

The Court must accept all factual allegations in the complaint as true and must draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). However, "to be entitled to the presumption of truth, allegations in a complaint . . . must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The Court need not presume the validity of any "a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (quotations omitted).

## II. Factual Background

The FAC, when stripped of conclusory legal assertions, contains the following factual allegations. Plaintiff owns a white 1996 Plymouth Voyager (the "car"). ECF No. 1-2 at ¶¶ 9, 233. Plaintiff's car was worth $2,000 on June 22, 2019 and contained "irreplaceable legal materials" allegedly worth about $10,000. *Id.* at ¶ 10. Defendant Dale Wineteer[1] provides towing and storage services to Defendant City. *Id.* at ¶ 19.

On or about June 22, 2019, Mr. Wineteer sent a tow truck to 4958 Newport Avenue, the location where Plaintiff's car was parked. *Id.* at 114.[2] Posted signs prohibited parking there after 4 a.m. *Id.* at ¶ 120. The truck was dispatched at 4:15:20 p.m. from the

---

[1] All references to Mr. Wineteer should be understood as references to Mr. Wineteer and the business names he operates under – A to Z Enterprises and Roadone San Diego.

[2] There is considerable confusion in the FAC as to who towed Plaintiff's car. Plaintiff asserts alternatively that (1) Mr. Wineteer's company took the car, *id.* at ¶ 20, (2) that Mr. Wineteer only stored Plaintiff's car after the SDPD "impounded Plaintiff's Vehicle," *id.* at ¶ 91, and (3) that another company, "C&D TOWING SPECIALISTS," towed the car. *Id.* at ¶ 141.

3

lot and arrived at 4:25:20 p.m. *Id.* at ¶¶ 115, 268. Plaintiff returned to his car before 4:00 a.m., but the company had already placed it on the tow truck by then. *Id.*

Various officers were present at the scene, including Sergeant Esmeralda Tagaban, Officer Cuellar (Doe #2), and, perhaps, Officer Kyle Webb. *Id.* at ¶¶ 115–17, 117 n.12. Plaintiff observed the tow truck operator attempt to hook another car to the truck. *Id.* at ¶ 116. Plaintiff asked the tow truck operator to "drop" his property. *Id.* at ¶ 117. One of the officers told Plaintiff that "once a vehicle is on the truck, we can't tell them to 'drop' it." *Id.* at ¶ 117. The truck left and returned to the lot by 4:36:20 p.m. *Id.* at ¶ 115.

On June 22, 2019, Plaintiff requested that Mr. Wineteer return his car. *Id.* at ¶ 24. Plaintiff also requested that Mr. Wineteer return the property inside the car on June 22, 2019 and June 24, 2019. *Id.* at ¶ 31. Mr. Wineteer did not return either. *Id.* at ¶ 32. Mr. Wineteer did not show Plaintiff a picture documenting the parking violation. *Id.* at ¶ 36.

On June 24, 2019, Plaintiff attempted to pay Doe 1 – an individual named "Earl" who, the Court infers, worked at the towing facility owned by Mr. Wineteer – $402 to retake possession of his car. *Id.* at ¶ 37. Doe 1 refused to accept the payment. *Id.* at ¶¶ 38, 55. Plaintiff then called the police. *Id.* at ¶ 56. SDPD Officers Heather Leavell and Scott Springer arrived on the scene. *Id.* at ¶ 57. Plaintiff requested that they call their supervisor, SDPD Supervisor Keelan McCullough, who arrived five minutes later. *Id.* One of the SDPD officers informed Plaintiff that his car had been towed pursuant to California Vehicle Code § 22651(m), which permits the towing of cars parked in violation of posted street signs. *Id.* at ¶¶ 259–20.

After 20 to 40 minutes of talking to Plaintiff, Supervisor McCullough convinced Doe 1 to allow Officers Leavell and Springer to escort Plaintiff to his car to retrieve his identification documentation. *Id.* at ¶ 58. Plaintiff's car had plates displaying the number "§17459." *Id.* at ¶ 59. Plaintiff took a video showing that his car was "forcibly entered without his consent, and had been ransacked, for no legitimate purpose." *Id.* at ¶ 67.

4

Before Plaintiff left, Doe 1 provided Plaintiff with a printout of the towing and storage information. *Id.* at ¶ 112. The printout showed that only eleven minutes transpired between the tow truck's arrival to Newport Avenue and its return to the lot. *Id.* at ¶ 115. The drive from Newport Avenue to the lot alone takes 11 to 14 minutes. *Id.* At 5:03:34 p.m. on June 24, 2019, Plaintiff got a "call receipt" from Doe 1 stating his car had no plates or tags on it when towed. *Id.* at ¶ 121.

On June 28, 2019, Plaintiff requested a post-storage hearing from the SDPD Traffic Division / Tow Administration ("TDTA"). *Id.* at ¶ 89. On July 1, 2019, at approximately 2:44 p.m., a TDTA Officer called Plaintiff and held an eight-minute telephonic hearing. *Id.* at ¶¶ 90–91. The TDTA Officer determined the tow was valid and informed Plaintiff that a lien sale of Plaintiff's property would occur "sometime soon." *Id.* at ¶ 91. Also, on June 28, 2019, Plaintiff received an "SDPD Records Division / Teletype Section" letter indicating his car had no plates or tags when towed. *Id.* at ¶ 121.

On July 5, 2019, Mr. Wineteer mailed a "Notice of Pending Lien Sale" to Plaintiff. *Id.* at ¶ 92. Plaintiff mailed a request to the California Department of Motor Vehicles ("DMV") to stop the sale. *Id.* The DMV received his request on July 11, 2019. *Id.*

On July 22, 2019, Plaintiff returned to Mr. Wineteer's tow lot located at 3801 Hicock Street. *Id.* at ¶ 143. Plaintiff's vehicle was no longer there. *Id.* at ¶ 143. A yard attendant, Doe 3, provided Plaintiff with a call sheet indicating that Plaintiff's car had no plates when towed on June 22, 2019 and said he had photos showing the same. *Id.* at ¶¶ 144–46. The call sheet also indicated that Plaintiff's car had been moved to another lot, station 7 located at 4247 Otay Mesa Road. *Id.* at ¶ 146.

### III. Analysis of Motion to Dismiss

#### a. First Cause of Action

In his first cause of action, Plaintiff alleges that the Mr. Wineteer or the SDPD improperly impounded his car. *Id.* at ¶¶ 31–33, 96. Plaintiff alleges that the City is responsible for all of Mr. Wineteer's conduct under a theory of respondeat superior

5

because Mr. Wineteer towed the car pursuant to his contract with the City for towing and storage services. *Id.* at ¶ 19–20, 49–52. Defendant asks that the Court dismiss this cause of action for two reasons: (1) the City is immune from tort liability absent a statute permitting suit and (2) Plaintiff has not adequately pled "a wrongful act" constituting conversion. ECF No. 2-1 at 5–6. The Court agrees.

First, pursuant to the Government Claims Act, a public entity is not generally liable for torts committed by its employees or contractors. *See* CAL. GOV'T CODE § 815 ("A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."); *Quigley v. Garden Valley Fire Prot. Dist.*, 7 Cal. 5th 798, 803 (2019). To hold a public entity accountable, the party seeking damages must identify a specific statute permitting recovery. *See, e.g.*, CAL. GOV'T CODE § 835 (creating liability for "injur[ies] caused by a dangerous condition of" public property); CAL. GOV'T CODE § 845.4 (creating liability for interfering with a prisoner's right to seek review of their confinement).

Here, Plaintiff cites to myriad statutes in California's Civil, Government, and Vehicle Codes without explaining how any statute explicitly permits this suit against the City. Consequently, the Court dismisses the first cause of action as to Defendant City. *See Searcy v. Hemet Unified Sch. Dist.*, 177 Cal. App. 3d 792, 802 (Ct. App. 1986) ("the statute . . . must at the very least be identified."); *Pallamary v. Elite Show Servs., Inc.*, No. 17-CV-2010-WQH, 2018 WL 3064933, at *11 (S.D. Cal. June 19, 2018) (dismissing case against San Diego because Plaintiff did not "provide sufficient facts in the FAC to establish the existence of a statutory duty owed by Defendant City or identify with particularity the statute or enactment that establishes a duty").

Second, even if a statute existed permitting a claim for conversion to be raised here, Plaintiff has not adequately alleged that claim. Under California law, the "elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property

rights; and (3) damages." *Hanover Ins. Co. v. Fremont Bank*, 68 F. Supp. 3d 1085, 1100 (N.D. Cal. 2014) (quoting *Burlesci v. Petersen*, 68 Cal. App. 4th 1062, 1066 (1998)).

Plaintiff's FAC does not present a clear, concise statement of how his car was "wrongful[ly]" towed. *Id.* At times, Plaintiff's FAC seems to rely on the assertion that towing any car without the owners' consent is unlawful. ECF No. 1-2 at ¶¶ 70–87. Elsewhere, Plaintiff seems to claim that the car was lawfully parked in the first place, and thus should not have been towed for that reason. *Id.* at ¶120. Still, at other points, Plaintiff seems to allege that the conversion occurred after the tow (i.e. when Doe 1 rejected Plaintiff's payment) or that the mere existence of fines and fees related to towing is conversion because such fees evince "an unjust, kleptocratic, practice of abusing civil asset forfeiture laws." *Id.* at 47, 54–56. Plaintiff's FAC is not even clear as to how the tow was performed, or by whom. *See id.* at ¶¶ 20, 91, 141. Plaintiff's inscrutable FAC fails to present a "short and plain statement" of the factual grounds for his first cause of action. Fed. R. Civ. Pro. 8(a)(1).

For these reasons, the Court GRANTS Defendant's motion and dismisses Plaintiff's first cause of action without prejudice.

### b. Second Cause of Action

In his second cause of action, Plaintiff alleges the City has committed fraud by attempting to cover up an unlawful tow. ECF No. 1-2 at ¶¶ 112, 131. Though captioned as a claim for "Actual and Constructive Fraud / Intentional Misrepresentation," Plaintiff's second cause of action contains multiple, disjoint claims (styled as "counts"). Defendant argues that Plaintiff's second cause of action is barred under CAL. GOV'T CODE § 815 to the extent it is a tort-based claim, and that Plaintiff has not adequately pled a claim for relief. ECF No. 2-1 at 5–7.

As a threshold matter, the Court dismisses any claims which rely on "threadbare recitals" of a statutory code without factual assertions to support them. *Iqbal*, 556 U.S. at 678. Thus, the Court GRANTS Defendant's motion as to Plaintiff's "counts" four (citing

7

CAL VEH. CODE § 22651.07(a)(1)(B)(3)), five (citing CAL VEH. CODE § 10650(a)), six (citing CAL VEH. CODE § 10655), eight (citing CAL GOV'T. CODE § 53243.4(a)), and ten (citing CAL VEH. CODE § 22651.07(j)). *Id.* at ¶¶ 124–26, 135, 151.

With respect to count one of the second cause of action, Plaintiff alleges that Defendants fraudulently towed his car. *Id.* at ¶ 112–13. A claim for fraud has five common law elements: "(1) misrepresentation of a material fact (consisting of false representation, concealment or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to deceive and induce reliance; (4) justifiable reliance on the misrepresentation; and (5) resulting damages." *Villalvazo v. Am.'s Servicing Co.*, No. CV-11-4868-CAS, 2012 WL 3018059, at *4 (C.D. Cal. July 23, 2012). A claim of fraud, moreover, must include allegations as to "the who, what, when, where, and how of the misconduct charged" to satisfy the higher pleading standard required by Federal Rule of Civil Procedure 9(b). *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011).

Here, Plaintiff's FAC contains sufficiently detailed allegations of fraud. Plaintiff straightforwardly claims that the TDTA finding of a valid tow was fraudulent in that the tow occurred "prior to the times posted on the signs prohibiting parking." ECF No. 1-2 at ¶ 120. To bolster his claim, Plaintiff notes four other misrepresentations. First, on June 22, 2019, an SDPD officer falsely told him "once a vehicle is on the truck, we can't tell them to 'drop' it." *Id.* at ¶ 117. Second, Plaintiff articulates how the printout from Doe 1 contained dispatch, arrival, and return times for the truck that are incompatible with what allegedly happened. *Id.* at ¶¶ 112, 115–16. Third, as can be allegedly corroborated by SDPD body camera footage, *id.* at ¶¶ 58–59, Plaintiff's car had plates and tags on the morning of June 22, 2019 and during his June 24, 2019 visit to the tow lot, despite Defendants' contradictory claims. *See id.* at ¶¶ 121 (as allegedly noted in the 6/24/19 Call Sheet and 6/24/19 SDPD let), 144–46 (as allegedly noted on the 7/29/19 Call Sheet). Fourth, the notices Plaintiff received from Mr. Wineteer's company and the police

8

located the tow at different addresses. *Id.* at ¶ 140. These allegations address the first two elements of fraud in that they contain multiple, material misrepresentations and allege Defendant's knowledge of that falsity. *Cafasso*, 637 F.3d at 1055.

Plaintiff's other allegations address the third, fourth, and fifth elements of fraud. According to the FAC, the City, its employees, and its contractors acted to purposefully deceive Plaintiff. *Id.* at ¶ 112–13, 131, 149. He relied on their misconduct and attempted to comply with the tow process. *Id.* at ¶ 118. He called the Tow administration, visited Mr. Wineteer's lot, attempted to recover his car, participated in a telephonic hearing, and responded to the letters he received. *Id.* at ¶¶ 24, 37, 89–92, 118. Plaintiff's allegations also show damages. *Id.* at ¶ 10. Consequently, Plaintiff has pled a *prima facie* claim of fraud. *Cafasso*, 637 F.3d at 1055; *Villalvazo*, 2012 WL 3018059, at *4.

However, the prohibition on public entity liability created by to CAL. GOV'T CODE § 815 applies with equal force to fraud claims. *See Lindsay v. Fryson*, No. 10-CV-02842-LKK, 2012 WL 2683019, at *4 (E.D. Cal. July 6, 2012) (dismissing fraud claim where Plaintiff did not satisfy the Government Claims Act). Plaintiff does not cite a statute under which the Court may hold a public entity liable for fraud. *Quigley*, 7 Cal. 5th at 803. Consequently, the Court GRANTS Defendant's motion as to the first count.

With respect to count two, Plaintiff asserts a related theory of liability: constructive fraud. *See* Cal. Civ. Code § 1573. To establish a claim for constructive fraud, "a plaintiff must allege: (1) a fiduciary or confidential relationship; (2) an act, omission or concealment involving a breach of that duty; (3) reliance; and (4) resulting damage." *Fabian v. LeMahieu*, No. 19-CV-00054-YGR, 2019 WL 4918431, at *14 (N.D. Cal. Oct. 4, 2019) (quoting *Sacramento E.D.M., Inc. v. Hynes Aviation Indus.*, 965 F.Supp.2d 1141, 1152 (E.D. Cal. 2013)). Plaintiff fails to allege any "fiduciary or confidential relationship" and thus the Court GRANTS Defendant's motion as to the second count. The Court also grants Defendant's motion pursuant to CAL. GOV'T CODE § 815.

9

With respect to count three, Plaintiff alleges a violation of California Vehicle Code § 10852. This code is a penal statute. *See People v. Anderson*, 15 Cal. 3d 806, 810 (1975). As Plaintiff has not cited any authority creating a private cause of action under this statute, the Court GRANTS Defendant's motion as to the third count.

With respect to count seven, Plaintiff misstates the law and alleges insufficient facts to make out a claim. The Vehicle Code prohibits the imposition of a "fee or service charge" when the motor vehicle owner is known except during "(1) the first 15 days of possession and (2) following that 15-day period, the period commencing three days after written notice is sent by the person in possession." CAL. VEH. CODE § 10652.5(a). Though the statute envisions "an action brought by, or on behalf of, a legal owner of a motor vehicle," only "[un]reasonable" fees or fees "in excess of that permitted" by the statute are actionable. *See id.* at § 10652.5(c)–(d). Here, Plaintiff makes no such allegations. Plaintiff does not even clearly state what fines, if any, were assessed by the lot. Consequently, the Court GRANTS Defendant's motion as to the seventh count.

With respect to count nine, Plaintiff again misinterprets the law. ECF No. 1-2 at ¶ 136. The California Government Code empowers a public entity to create a "whistleblower hotline" to be managed by a "city, county, or city and county auditor or controller." CAL. GOV'T. CODE at § 53087.6(a)(1)–(2). Reportable misconduct includes "any activity by a local agency or employee that is . . . in violation of any local, state, or federal law or regulation relating to corruption, malfeasance, bribery, theft of government property, fraudulent claims, fraud, coercion, conversion, malicious prosecution, misuse of government property, or willful omission to perform duty, is economically wasteful, or involves gross misconduct." *Id.* at § 53087.6(f)(2). When the hotline receives "specific information that an employee or local government has engaged in an improper government activity" as defined in the statute, the auditor "may conduct an investigative audit of the matter" *Id.* at § 53087.6(e)(1). A report of "substantiated" misconduct can then be shared with "the appropriate appointing authority for disciplinary purposes." *Id.*

at § 53087.6(e)(3). In the absence of any facts relevant to this kind of hotline program, § 53087.6 is plainly inapplicable to Plaintiff's suit. Consequently, the Court GRANTS Defendant's motion as to ninth count.

### c. Fourth Cause of Action

In his fourth cause of action, Plaintiff alleges that the City of San Diego is liable under *Monell* for Defendants' seizure of his car and property. ECF No. 1-2 at ¶¶ 225–83. Defendants argue that Plaintiff only offers a "vague and formulaic recitation" of the causes of action. ECF No. 2-1 at 7–8. The Court dismisses Plaintiff's inadequate claims.

In § 1983 suits, municipalities cannot be held vicariously liable for the actions of their employees.[3] *Monell*, 436 U.S. at 691. Instead, *Monell* liability arises in three different contexts. *See Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 803 (9th Cir. 2018). First, a defendant can be found liable if a municipality's "policy or custom" becomes the "moving force" for a "constitutional violation" injuring the plaintiff. *Monell*, 436 U.S. at 694. Second, a municipality can incur *Monell* liability by failing to train or supervise its employees where that failure evinces the municipality's "deliberate indifference" to a constitutional right." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). Third, a municipality may also be liable if the tortfeasor "was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097 (9th Cir. 2013) (quotations omitted).

A municipal "policy" exists when "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for

---

[3] Plaintiff does not sufficiently explain how liability arises under 42 U.S.C. § 1981 and § 1982 to merit a separate discussion of each statute. Because Plaintiff does not allege race-based discrimination, it is plainly evident that these statutes are irrelevant to Plaintiff's *Monell* claim. *See Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987) (discussing § 1981); *Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 617 (1987) (discussing § 1982).

establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). A municipality may be liable "if it has a policy of inaction and such inaction amounts to a failure to protect constitutional rights." *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (citing *City of Canton,* 489 U.S. at 388).

A custom is "a widespread practice that . . . is so permanent and well settled as to . . . [accrue] the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quotations omitted). Liability for custom claims "may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), *modified on other grounds by Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001). Though it is unclear from "the caselaw the quantum of allegations needed to survive a motion to dismiss a pattern and practice claim," *Gonzalez v. Cty. of Merced*, 289 F. Supp. 3d 1094, 1099 (E.D. Cal. 2017), "where more than a few incidents are alleged, the determination appears to require a fully-developed factual record." *Lemus v. Cty. of Merced*, No. 15-CV-00359-MCE, 2016 WL 2930523, at *4 (E.D. Cal. May 19, 2016), *aff'd*, 711 F. App'x 859 (9th Cir. 2017).

Plaintiff's fourth cause of action entails two distinct *Monell* claims: an alleged custom of improperly towing cars to increase the city's revenue in violation of the Fourth Amendment, and a policy of executing tows without pre-tow hearings in violation of the Fifth and Fourteenth Amendments. The Court analyses each in turn.

### i. Custom of Improperly Towing Vehicles to Increase Revenue

At first, Plaintiff's custom claim appears adequately pleaded in that he identifies an allegedly unreasonable deprivation of property and alleges that an existing custom among City employees and contractors caused that deprivation. Plaintiff characterizes Defendants' custom as an "officially sanctioned practice of improperly causing vehicles to be towed or removed in order to create or acquire lienhold interests." ECF No. 1-2 at ¶ 265. Plaintiff asserts that, pursuant to this custom, a city contractor towed his car even

12

19-cv-1492-GPC-BGS

though it was legally parked, and that the car neither "interfere[d] with the normal flow of traffic" not "create[d] a hazard" at the time. *Id.* at ¶¶ 120, 267–69. Plaintiff also alleges that the SDPD officers present at the tow "intentionally, recklessly, and without regard for the truth" instructed Plaintiff that the car could not be unhooked to comply with the City's alleged practice of improperly towing cars "to create or acquire lienhold[s]" and "generate[] undue revenue." *Id.* at ¶¶ 271–72.

However, Plaintiff does not allege sufficient facts to show that the instant conduct, even if true, was part of a larger "custom." *See Cardenas v. Cty. of Alameda*, Case No. 16-CV-5205-WHA, 2017 WL 1650563, at *3 (N.D. Cal. May 2, 2017) ("One occurrence, even if probable, does not a custom make."). Plaintiff neither refers to other, similar incidents nor cites to reports or media that would fairly place the City on notice of the alleged custom. *Cf. Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Consequently, the Court GRANTS Defendant's motion as to Plaintiff's custom theory.

### ii. Policy of Towing Vehicles Without a Pre-Tow Hearing

Plaintiff also asserts that the City's practice of "towing and impounding [] vehicles without a pre-seizure hearing" is "fundamentally unfair." ECF No. 1-2 at ¶¶ 255; 294. Plaintiff identifies San Diego Municipal Codes §§ 82.30(b), 12.0201, and SDPD Procedure 7.08 (Vehicle Towing/Impound and Release Procedures) as the official codes manifesting the City's unlawful policy. *Id.* at ¶ 228, 251–52, 266, 270, 276. Plaintiff's claim thus turns on whether the absence of a pre-seizure hearing amounts to a due process violation. *See Ass'n for Los Angeles Deputy Sheriffs v. Cty. of Los Angeles*, 648 F.3d 986, 994 (9th Cir. 2011) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)) (analyzing due process claim in the § 1983 context).

As is the case in other circuits, there is no right to a pre-tow hearing in the Ninth Circuit. *See Soffer v. City of Costa Mesa*, 798 F.2d 361, 362 (9th Cir. 1986); *Sutton v. City of Milwaukee*, 672 F.2d 644, 645–47 (7th Cir. 1982); *cf. City of Los Angeles v. David*, 538 U.S. 715, 719 (2003) (finding a 27-day delay in holding a reimbursement

13

hearing did not violate due process); *Miranda v. City of Cornelius*, 429 F.3d 858, 867 (9th Cir. 2005) (remanding for further factual development on question of whether a hearing is required prior to towing car parked on private property). Though the facts of *Soffer* involved an abandoned car, *Soffer* has been applied with equal force to "the towing and impoundment from public streets of vehicles for traffic violations," including parking offenses. *Cholerton v. Brown*, No. CV-13-8992-GW, 2014 WL 3828209, at *1 (C.D. Cal. Aug. 1, 2014); *see also McCain v. California Highway Patrol*, No. 11-CV-01265-KJM, 2017 WL 4269877, at *3–*4 (E.D. Cal. Sept. 26, 2017) (car towed after car stop for various infractions). Consequently, Plaintiff's claim fails as a matter of law, and the Court GRANTS Defendant's motion as the second *Monell* theory presented by Plaintiff's fourth cause of action for failing to state a claim upon which relief can be granted.

### d. Fifth Cause of Action

In his last cause of action, Plaintiff alleges that Defendants have engaged in a conspiracy to further the City's policy of improperly impounding people's property. ECF No. 1-2 at ¶¶ 287–91, 300, 329. Defendant contends that Plaintiff's FAC lacks the factual detail necessary to plead conspiracy. ECF No. 2-1 at 7–8. The Court agrees.

Section 1985 prohibits "depriving persons of rights or privileges." 42 U.S.C. 1985(3). To state a § 1985(3) claim, Plaintiff "must allege (1) a conspiracy, (2) to deprive any person or a class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States." *Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980). A conspiracy exists where "the conspiring parties reach[] a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement." *Lacey v. Maricopa Cty.*, 693 F.3d 896, 935 (9th Cir. 2012) (quotations omitted). While each participant need not know the exact details of the conspiracy, each

14

participant must share a common objective. *Id.* A "defendant's knowledge of and participation may be inferred from circumstantial evidence." *Id.*

Here, Plaintiff alleges that the City, SDPD, Doe 2, and Does 4–9 are under "contractual, express agreement" with Mr. Wineteer, his companies, Doe 1, Doe 3, and Does 1–25. *Id.* at ¶ 292. Plaintiff explains that, vis-à-vis this agreement, Defendants have "promulgated, adopted, ratified, and sanctioned [an] annual custom, of . . . improperly causing vehicles to be towed or removed in order to create or acquire lienhold interests." *Id.* at ¶ 298. As a part of that conspiracy, Mr. Wineteer and his companies "act[] as a storage locker" for Defendant City. *Id.* at ¶ 300. Plaintiff asserts that, as target of the conspiracy, he was unlawfully deprived of his property, and that the Defendants' collaborations "appear to be retaliatory in nature." *Id.* at ¶¶ 302, 314.

The Court's analysis begins and ends with the first *Gillespie* factor as these facts do not give rise to a plausible conspiracy. Plaintiff's cursory account of the conspiracy does not permit the Court to infer a "unity of purpose" between the participants. *Cf. Lacey*, 693 F.3d at 935–36 (finding complaint "adequately alleged" a conspiracy by explaining the purpose of the conspiracy and "detail[ing] reasons for why each [participant] had a motive to" participate). Likewise, the minimal facts alleged here do not explain how the conspiracy works, what each participant does, or whether anyone else has been affected by this grand scheme. *Cf. Gilbrook v. City of Westminster*, 177 F.3d 839, 857 (9th Cir. 1999), as amended on denial of reh'g (July 15, 1999) (finding sufficient facts were adduced at trial, including as to the specific roles of each conspirator, to sustain a verdict as to conspiracy). Simply put, Plaintiff's "allegations that the [City and the SDPD] conspired with [Mr. Wineteer, his companies, and the Does] does not present enough plausible allegations." *Harris v. Cooper*, No. 17-CV-0871-NJV, 2017 WL 2572554, at *3 (N.D. Cal. June 14, 2017); *Williams v. Paramo*, No. 12-CV-00113-BTM, 2017 WL 5705834, at *6 (S.D. Cal. Nov. 27, 2017).

**IV. Leave to Amend Complaint**

15

Under Federal Rule of Civil Procedure Rule 15(a), leave to amend "shall be freely granted when justice so requires." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). Leave to amend shall be denied only if an amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

Here, the Court GRANTS Plaintiff leave to amend the FAC. Though the Court has identified multiple legal theories which appear futile, the Court is mindful of Plaintiff's *pro se* status and permits Plaintiff the opportunity to cure the FAC's defects. *See Lillis v. Apria Healthcare*, No. 12-CV-52-IEG, 2012 WL 4760908, at *1 (S.D. Cal. Oct. 5, 2012) (recognizing "Ninth Circuit's extremely liberal policy favoring leave to amend in the pro se context"). Nonetheless, the Court cautions Plaintiff should not merely re-file the prior complaint with minor alterations. For the benefit of all parties and the Court, Plaintiff should substantially shorten the FAC, remove all conclusory legal citations, and eliminate any redundant factual assertions. Futile legal claims included in future complaints will be dismissed with prejudice. *See Godwin v. Christianson*, 594 Fed. Appx. 427, 428 (2015).

## V. Conclusion

Based on the above, the Court GRANTS Defendant's motion to dismiss the first, second, fourth, and fifth causes of action with leave to amend. Plaintiff may refile a second amended complaint **no later than December 15, 2019.** The hearing set for November 15, 2019 shall be vacated.

**IT IS SO ORDERED.**

Dated: November 14, 2019

*[signature]*
Hon. Gonzalo P. Curiel
United States District Judge